## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TIKIA W.,[1]
*on behalf of A.S.W.*,

        Plaintiff,

v.

                               ACTION NO. 2:22cv416

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Plaintiff A.S.W., by her guardian, Tikia W., brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An order of reference assigned this matter to the undersigned. ECF No. 11. It is hereby recommended that A.S.W.'s motion for summary judgment, ECF No. 15, be **DENIED**, and the decision of the Commissioner be **AFFIRMED**.

## I.      PROCEDURAL BACKGROUND

Tikia W., on behalf of A.S.W., filed an application for SSI on December 3, 2019, alleging that she became disabled on April 1, 2016, due to attention deficit hyperactivity disorder

---

[1] In accordance with a committee recommendation of the Judicial Conference, plaintiff's last name has been redacted for privacy reasons. Comm. on Ct. Admin. & Case Mgmt. Jud. Conf. U.S., Privacy Concern Regarding Social Security and Immigration Opinions 3 (2018).

("ADHD"). R. 11, 104–05, 126.[2] Following the state agency's denial of her claim, both initially and upon reconsideration, A.S.W. requested a hearing before an Administrative Law Judge ("ALJ"). R. 62–75. A.S.W. waived her right to have counsel at the hearing. R. 27.

ALJ L. Raquel Bailey Smith held a hearing on September 28, 2021, and issued a decision denying benefits on December 8, 2021. R. 8–38. The Appeals Council denied A.S.W.'s request for review of the ALJ's decision. R. 1–5, 103. Therefore, the ALJ's decision stands as the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. §§ 405(h), 1383(c)(3); 20 C.F.R. §§ 416.1455(b), 422.210(a).

Having exhausted all administrative remedies, A.S.W. filed a complaint, ECF No. 1, with this Court on October 7, 2022, and the Commissioner answered the complaint on December 15, 2022, ECF No. 9. On February 15, 2023, A.S.W. filed a motion for summary judgment, a supporting memorandum, and a waiver of oral argument. ECF Nos. 15–17. On March 17, 2023, the Commissioner filed a brief in support of the decision to deny disability benefits, ECF No. 18, and A.S.W. replied on March 31, 2023, ECF No. 19. As neither party has indicated special circumstances requiring oral argument, the case is deemed submitted for a decision.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   *Background Information and Function and Disability Reports Completed by Tikia W. from December 27, 2019 to January 26, 2021*

A.S.W. was born in December 2007 and was eight years old as of the alleged onset date of disability of April 1, 2016. R. 31, 40. On December 27, 2019, A.S.W.'s mother and legal guardian, Tikia W., completed a function report. R. 114. At that time, A.S.W. was twelve years old and lived with her mother and three siblings, ages one, six, and fourteen. R. 104–06; *see* R. 219. The

---

[2] Page citations are to the administrative record the Commissioner previously filed with the Court.

report provided the following information.  A.S.W. had no problems seeing, hearing, or taking care of her personal needs and safety.  R. 115, 120.  A.S.W. had no physical limitations or impairments that affected her social activities or behavior with other people.  R. 118–19.  People unfamiliar with A.S.W. sometimes had difficulty understanding her, and she had difficulty telling jokes or riddles accurately, explaining her actions, and asking for what she needs.  R. 116–17.  A.S.W. had difficulty spelling words of more than four letters, adding and subtracting numbers over ten, multiplying and dividing numbers over ten, and understanding how to make correct monetary change.  R. 118. *But see* R. 220 (A psychological evaluation conducted six months after the function report was completed indicated that A.S.W. "could spell WORLD forward and backward . . . did simple addition, subtraction, and multiplication problems correctly" but "missed the change from $5.00 after spending $4.15").  A.S.W. could complete her chores most of the time but had limitations in working on arts and crafts projects, keeping busy on her own, finishing things she starts, and completing homework on time.  R. 121.

Tikia W. also completed a disability report a month later, on January 22, 2020.  R. 125–30.  The report indicated that A.S.W. was in the sixth grade and had not been seen or examined for emotional or mental problems since the alleged onset date.  R. 126–28.[3]  She was not tested for behavior or learning problems, was not enrolled in special education, and did not use speech or language therapy.  R. 128.  A.S.W. did not take any medications and had not been medically tested for other illnesses, injuries, or conditions.  R. 127.

---

[3] Tikia W. explained in the disability report that A.S.W. received counseling for "issues" at Eden Counseling Center in 2016.  R. 126.  There are no documents from Eden Counseling Center in the record.    Consultative examination notes indicate that A.S.W.'s schools made multiple recommendations for counseling, but no further services were sought.  R. 219.

Another disability report completed eight months later on September 17, 2020, indicated there were no changes in A.S.W.'s physical or mental conditions. R. 141. Tikia W. noted that A.S.W. had been "acting out a lot more" and had become "very lazy." R. 142, 144. Tikia W. scheduled a mental health appointment for A.S.W. at General Booth Pediatrics. R. 142. No other changes were reported. R. 141–46. Tikia W. updated the report on January 26, 2021, indicating that A.S.W.'s "behavior and attitude" had worsened and that A.S.W. ran away "in the middle of the night" and "constantly talks about killing herself." R. 153–54. Tikia W. also noted that A.S.W. "locks herself in her room . . . cusses . . . beats on her siblings . . . [and] plays music all day." R. 154. No updated medical or educational records were attached. R. 149–52.[4]

**B.   *Hearing Testimony***

On September 28, 2021, the ALJ conducted a hearing, and Tikia W. and A.S.W. provided the following information. R. 22. A.S.W. was thirteen years old and in the eighth grade. R. 29. She attended Bayside Middle School in person and previously attended Renaissance Academy.[5] *Id.*; *see* R. 218 (Tikia W. indicated that A.S.W. was transferred from Bayside Middle School to Renaissance Academy for sixth grade after being frequently suspended for "inappropriate behavior"). She was not involved in any activities and did not have any friends at school. R. 30. Tikia W. noted that A.S.W. did not have a formal ADHD or bipolar disorder diagnosis, because

---

[4] On February 18, 2021, A.S.W.'s aunt completed a disability report, which recounted generally similar information as Tikia W.'s January 26, 2021, disability report. R. 157–62

[5] Renaissance Academy's Alternative Program is a flexible learning opportunity that provides an "[a]ge-appropriate direct intervention that addresses student social-emotional behavior concerns." *Renaissance Academy Alternative Programs (Grades 6–8)*, Virginia Beach City Public Schools, https://vbcoursecatalog.vbschools.com/renaissance-academy-alternative-programs-grades-68 (last visited Aug. 8, 2023). Furthermore, "[s]tudents are recommended for placement," and an "individualized plan" is created for each student "with the ultimate goal of remediating their academic needs." *Id.*

she had been unable to access medical services during the COVID-19 pandemic.  R. 28, 31; *see* R. 124, 143.  A.S.W. was not taking any medications, had never been hospitalized, and did not have regular doctor appointments.  R. 31–32.  A.S.W. had trouble getting ready for school, stayed up until two o'clock in the morning, did not help with household chores, and did not get along with family members.  R. 32, 35.  A.S.W. did not have any problems walking, running, jumping, or climbing.  R. 32.  She did not receive any special services or support at school.  R. 33.  When questioned about A.S.W.'s ability to read, write, and do math, Tikia W. indicated that A.S.W. had incomplete schoolwork, but she did not know if A.S.W. was unable to complete it or if she was "just not doing the work."  R. 34–35.  Tikia W. believed A.S.W. got along with her classmates, but did not "want to be bothered" by anyone, "so she sat by herself[,] and she ate lunch by herself" at Renaissance Academy.  *Id.*  Tikia W. reported that A.S.W. "stay[ed] off task," did not listen, left the house without permission, and came back at her own convenience, but A.S.W.'s teachers had not reported any behavioral problems or problems paying attention.  R. 35–36.  Tikia W. reported that she believed something was wrong with A.S.W. because A.S.W.'s 15-year-old sibling did not behave similarly at A.S.W.'s age.  R. 36.  At the end of the hearing, the ALJ ordered medical records from General Booth Pediatrics and school records from Bayside Middle School and Renaissance Academy.  R. 33–34, 37.

## C.    *Relevant Medical and Educational Evidence*

### 1.    *School Evaluations[6] and Teacher Questionnaires from Renaissance Academy*

In May 2019, A.S.W. passed her fifth-grade reading assessment and failed her mathematics

---

[6] SSA made two unsuccessful attempts on October 6, 2021, and October 20, 2021, to secure non-medical records from Bayside Middle School.  R. 188–204, 205–07; *see* 20 C.F.R. § 416.924a(b)(7)(ii) ("We will consider all the evidence we receive from your school, including teacher questionnaires, teacher checklists, group achievement testing, and report cards.").

assessment.  R. 178.  In October 2021, her school counselor at Renaissance Academy responded to a request from the SSA, indicating that A.S.W. was attending regular education classes with no special instruction.[7]  *Id.*

On March 3, 2020, an unidentified teacher[8] at Renaissance Academy completed a teacher questionnaire.  R. 131–138.  The questionnaire lacked information about how long the teacher had known A.S.W. and the frequency of their interaction.  R. 131, 138.  The questionnaire prompted comparison of A.S.W.'s functioning in five domains (each of which had several areas) to that of a child of the same age without impairments.  R. 131–38.  The teacher indicated that A.S.W. had no problems and was functioning at age-appropriate levels in two of the five domains:  acquiring and using information and in moving about and manipulating objects.  R. 132, 135.  With respect to the remaining three domains, the teacher found A.S.W. had problems with respect to some of the domain areas and rated those on a scale of one to five, with one being no problem, four being a serious problem, and five being a very serious problem.  R. 133–36.

_____

[7] The record does not reflect that A.S.W. had an Individualized Education Program ("IEP") or Section 504 plan.  Section 504 of the Rehabilitation Act and the Americans with Disabilities Act ("Section 504 plan") is a civil rights law protecting individuals with disabilities from discrimination on the basis of disability.  29 U.S.C. § 794.  Section 504 provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  A 504 plan differs in some respects from an IEP under the Individuals with Disabilities in Education Act, codified at 20 U.S.C. §§ 1400, *et seq.*  For example, a 504 plan has a broader definition of disability than an IEP and has fewer rigid requirements in its application.  *See* 20 C.F.R. § 416.924a(b)(7)(iii) ("We will consider information in your . . . Individualized Education Program . . . to help us understand your functioning.").

[8] The unidentified individual failed to provide their name, title, telephone number, or any other identifying information in the questionnaire's designated space; therefore, the Court is operating under the ALJ's assumption that the individual is a teacher.  R. 131, 138; *see* R. 16 (The ALJ referred to evidence from "a Renaissance Academy *schoolteacher.*") (Emphasis added); R. 137 ("PLEASE PROVIDE [YOUR] NAME/TITLE ON [THE] NEXT PAGE.").

Under the domain of attending to and completing tasks, the teacher indicated that A.S.W. had "serious" problems, a rating of four, with respect to two of the thirteen domain areas—changing from one activity to another without being disruptive and working without distracting herself or others. R. 133. In the domain of interacting and relating to others, the teacher found that A.S.W. had serious problems with respect to two of the thirteen domain areas—following rules (in the classroom and during games and sports) and respecting or obeying adults in authority. R. 134. The teacher noted, however, that A.S.W.'s problems were not so severe as to require implementation of behavior modification strategies. *Id.* In the domain of caring for herself, the teacher noted A.S.W. had a serious problem with respect to one out of the ten domain areas—responding appropriately to changes in her own mood (that is, calming herself). R. 136.

Over one and one-half years later, on October 29, 2021, Andrea Hemphill ("Hemphill"), A.S.W.'s seventh grade English teacher, completed a similar teacher questionnaire. R. 180–87; *see* R. 31. Ms. Hemphill reported that she had known A.S.W. for three weeks and spent nearly an hour with A.S.W. daily in a setting with twelve other students. R. 180. She found A.S.W. had no serious problems in four of the five domains—acquiring and using information, attending and completing tasks, interacting and relating with others, and moving about and manipulating objects. R. 181–84. Ms. Hemphill's handwritten notes explain the less than serious problems A.S.W. had in these domains, including that A.S.W.: (1) "does well with instruction, but [the instructions] often need to be repeated 1:1 even if [she is] given a written list. She does require extra help, but not an alarming amount"; (2) "sometimes struggles to stay on task, but once redirected she is able to focus. Sometimes she does not like to wait for help if [the teacher is] supporting another student"; and (3) "gets angry if anyone touches her things or if she cannot have access to headphones. She is slightly socially awkward and sometimes struggles with body language ques."

7

R. 181–83.

In the domain of caring for herself, Ms. Hemphill noted A.S.W. had a serious problem with respect to two out of the ten domain areas—responding appropriately to changes in her own mood (that is, calming herself) and using appropriate coping skills to meet the daily demands of the school environment. R. 185. Ms. Hemphill explained that A.S.W. "get[s] angry if any of her things are taken by teachers and she is unable to self-soothe. She cannot handle changes in her mood and sometimes becomes agitated if she has to wait for help." *Id.*

### 2. *Medical Notes from General Booth Pediatrics – David Norris, M.D.*

A.S.W. was seen at General Booth Pediatrics from 2007 to 2017 for routine care, but the record does not contain any additional information about these visits.[9] R. 126, 211.

A.S.W. met with David Norris, M.D., for a well adolescent visit and sports physical on June 1, 2020. R. 215–16. Dr. Norris noted that A.S.W. was "doing well in school," socializing and interacting well, and had normal sleep, diet, and menstruation. R. 215. On examination, A.S.W. had normal musculoskeletal and neurologic function and overall "normal growth and development." R. 215–16. Dr. Norris noted that A.S.W. was cooperative and had an appropriate mood and affect. R. 216. He noted no concerns other than mild to moderate acne and a low systolic blood pressure. R. 215–16. Dr. Norris prescribed medication for acne and directed A.S.W. to return as needed for acne follow-up and for her routine checkup. R. 216. He completed a sports physical form recommending "full participation in all school sponsored sports activities." *Id.*

---

[9] In February 2020, the SSA requested medical records from General Booth Pediatrics from January 1, 2018, to February 20, 2020. R. 212–13. General Booth Pediatrics reported that A.S.W. had last been seen on March 6, 2017, and therefore, no records existed for the dates requested. R. 211.

### 3. *Consultative Examination at Hampton Roads Behavioral Health – Karen M. Armstrong, Ph.D.*

Karen M. Armstrong, Ph.D., a consultative examiner with Hampton Roads Behavioral Health, performed a telephonic psychological evaluation of A.S.W. on June 23, 2020. R. 218–21. During this evaluation, Dr. Armstrong provisionally diagnosed A.S.W. with oppositional defiant disorder ("ODD").[10] R. 221.

Dr. Armstrong observed A.S.W. lying on her bed under the covers during the interview while using her mother's phone. R. 220. Tikia W. reported that A.S.W. had an "onset of problems when her father died in 2011," but the problems subsided once she started preschool. R. 218. She then noted that A.S.W.'s problems began again in fourth grade. *Id.* Tikia W. reported that A.S.W.'s current problems include "refusal to cooperate at home and school, defiance of authority, refusal to comply with house rules and chores, bullying her three siblings, aggression towards peers, atypical sleep schedule, and low social interest within the household and with peers." R. 218. Her mother also noted that she missed "considerable school due to frequent suspensions" but did not believe A.S.W. had any learning or academic problems. *Id.* Tikia W. believes A.S.W. reads at her appropriate grade level and can complete her schoolwork using the Chromebook assigned to her. *Id.*

During the mental status evaluation performed by Dr. Armstrong, A.S.W. denied having current or prior thoughts of suicide, homicide, or self-harm. R. 219. Dr. Armstrong noted that

---

[10] ODD "includes a frequent and ongoing pattern of anger, irritability, arguing and defiance toward parents and other authority figures . . . includes being spiteful and seeking revenge" and causes "serious problems with family life, social activities, school and work." *Oppositional Defiant Disorder (ODD)*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/oppositional-defiant-disorder/symptoms-causs/syc-20375831 (last visited Aug. 8, 2023). Treatment includes "learning skills to help build positive family interactions and to manage problem behaviors[,] . . . [o]ther therapy, and possibly medicines." *Id.*

A.S.W. demonstrates "no impairment of receptive or expressive language skills," her speech is intelligible, and "she ha[s] normal thought process and seemingly logical thought progression." R. 220. A.S.W. can accurately perform tasks such as spelling, addition, subtraction, and multiplication. *Id.* Further, she can accurately provide information on current and historic events. *Id.* Dr. Armstrong noted that A.S.W. had a "broadly adequate attention span," "cooperated with all mental status tasks requested," and "could pay attention adequately to input information without need for repetition or extra explanation." *Id.* "Her insight [is] not grossly impaired," but her "judgment seem[s] likely to be impaired," and she seemed socially self-focused. *Id.* Ultimately, Dr. Armstrong indicated that A.S.W.'s prognosis is "fair to good with sustained mental health intervention." R. 221.

### 4. *Findings of State Agency Medical Consultants – Nicole Sampson, Ph.D., and Leslie E. Montgomery, Ph.D., A.B.P.P.*

Having considered A.S.W.'s available educational records from middle school, her consultative examination report from Dr. Armstrong, her medical records from General Booth Pediatrics, and function reports completed by Tikia W., state agency psychologist, Nicole Sampson, Ph.D., determined on June 24, 2020, that A.S.W.'s ODD constituted a severe medical impairment, but did not meet, medically equal, or functionally equal listing 112.08—personality and impulse-control disorders. R. 41–45. Dr. Sampson noted that, upon consideration of the six domains required to assess whether a minor's impairment functionally equal a listing, A.S.W. was not limited in acquiring and using information, in moving about and manipulating objects, and in health and physical well-being, and her limitations were "less than marked" in attending and completing tasks, in interacting and relating with others, and in caring for herself, and, therefore, her medically determinable impairment "[d]oes not functionally equal the listing[]." R. 44–46.

Upon reconsideration on November 17, 2020, Dr. Leslie E. Montgomery found the same

10

impairment and reached the same conclusion as Dr. Sampson.  R. 55–59.

### III.    THE ALJ's DECISION

To evaluate the disability claim of a minor,[11] the ALJ followed a sequential three-step analysis set forth in the SSA's regulations for determining whether an individual is disabled. *See* 20 C.F.R. § 416.924.  Specifically, the ALJ considered whether A.S.W.: (1) is engaging in substantial gainful activity; (2) has severe mental or physical impairments; and (3) has severe impairments that meets, medically equals, or functionally equals a condition within the SSA's listing of official impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  R. 12–18.

At step one, the ALJ determined A.S.W. has not engaged in substantial gainful activity since December 3, 2019, the date of her application.  R. 12.  At step two, the ALJ determined that A.S.W. has two severe impairments, ODD and personality disorder, but any other impairments are "non-severe, as they have been responsive to treatment and/or cause no more than minimal functional limitations."  *Id.*  At step three, the ALJ found that A.S.W.'s impairments (and the combination thereof) neither meet nor medically equal the severity of a listing.  R. 12–14.  Further, by examining the six domains of functioning, the ALJ determined that the limitations resulting from A.S.W.'s impairments do not functionally equal the listed impairments.  R. 14–18.  Accordingly, the ALJ concluded that A.S.W. was not disabled from the date of her SSI application through the date of the decision on December 8, 2021.  R. 18.

---

[11] To qualify for SSI, an individual under age 18, is considered "disabled" if they "have a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.

## IV.    STANDARD OF REVIEW

In reviewing a Social Security disability decision, the Court is limited to determining whether the Commissioner applied the proper legal standard in evaluating the evidence and whether substantial evidence in the record supports the decision to deny benefits.  42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).

When reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Johnson*, 434 F.3d at 653.  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Id.* (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  Thus, reversing the denial of benefits is appropriate only if either (1) the record is devoid of substantial evidence supporting the ALJ's determination, or (2) the ALJ made an error of law. *Id.*

The ALJ must discuss which evidence she finds "credible and why, and [discuss her] specific application of the pertinent legal requirements to the record evidence." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).  The Court is required to "read the ALJ's decision as a whole" and ensure that the ALJ's "path may reasonably be discerned." *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018); *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021).  Furthermore, "there

is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision"

and provide an exhaustive explanation. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir.

2014); *see generally T-Mobile South, LLC v. Roswell, Georgia*, 135 S. Ct. 808, 815 (2015) (The

ALJ's reasons "need not be elaborate.").

## V.   ANALYSIS

***The ALJ sufficiently explained her finding that A.S.W.'s impairments do not meet, medically
equal, or functionally equal the listings, and substantial evidence supports the finding.***

Having determined that A.S.W. was not engaged in "substantial gainful activity" (step one)

and suffered from severe medically determinable impairments (step two), the ALJ next considered

whether A.S.W.'s limitations met, medically equaled, or functionally equaled an impairment listed

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the listings"),[12] and had lasted or were expected to last for

a period of at least 12 months (step three).  20 C.F.R. § 416.924(b)–(d).  The relevant listing in

A.S.W.'s case is 112.08 (personality and impulse-control disorders).[13]  R. 12; *see* 20 C.F.R.

§§ 416.924, 416.925, 416.926.  To meet or medically equal a listing, a claimant's impairment or

combination thereof must satisfy "all of the criteria" of that listing.  20 C.F.R. § 416.925(d);

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (noting that "[a]n impairment that manifests only

some of those criteria, no matter how severely, does not qualify").  If the claimant's impairments

---

[12] In deciding whether a claimant has an impairment or combination thereof that meets, medically equals, or functionally equals a listing, the regulations require consideration of the combined effect of all medically determinable impairments, even those that are not severe.  20 C.F.R. §§ 416.923(c), 416.924(a), 416.924a(b)(4), 416.926a(a) and (c).  Part B of the listings defines severe impairments and what evidence is needed to meet or medically equal the listings for children.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Part A mirrors Part B, except that it is used to assess disabilities in adults.  *Id.*

[13] The ALJ also lists 112.14 (developmental disorders in infants and toddlers), which is not relevant because it only applies to children up to the age of three years old.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.00(A)(2)(b).

do not meet or medically equal any listing, the ALJ must determine whether the claimant has an impairment or combination of impairments that functionally equals a listing.   20 C.F.R. § 416.924(a).  A plaintiff bears the burden of showing the relevant criteria are met and must present medical findings "at least equal in severity and duration to the criteria" for the most similar, listed impairments.  *Id.* § 416.926(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ found that A.S.W.'s impairments do not meet or equal in severity the criteria of a listed impairment and do not functionally equal the severity of the listing.  R. 12, 14.  A.S.W. asserts that the ALJ committed error by failing "to properly consider the questionnaire provided by [A.S.W.'s] teacher," failing to "provide any meaningful explanation of how she assessed the opinion," and omitting analysis of portions of the questionnaire completed by Andrea Hemphill, A.S.W.'s seventh-grade teacher, "despite [finding it to be] generally persuasive."  Pl.'s Mem. in Support of Motion for Summary Judgment ("Pl.'s Mem."), ECF No. 16, at 9–10, 12.  A.S.W. specifically contests the ALJ's findings of less than a marked limitation in attending to and completing tasks, interacting and relating with others, and caring for herself.  Pl.'s Mem. 7.  A.S.W. asserts that the ALJ's findings are "unsupported by substantial evidence" in that the ALJ improperly failed to address evidence favorable to A.S.W.   Pl.'s Reply to Def.'s Br. ("Pl.'s Reply"), ECF No. 19, at 2.

The Commissioner asserts that the ALJ's finding of a less than marked limitation in attending and completing tasks and relating to and interacting with others is supported by substantial evidence and that the unidentified teacher's questionnaire is not consistent with other evidence in the record.  Def.'s Br. in Supp. of Decision Denying Disability Benefits ("Def.'s Br.") ECF No. 18, at 13–14; *see* R. 16.  For example, the Commissioner maintains that Ms. Hemphill does not "endorse the 'serious' assessments the [unidentified] individual had included."  Def.'s

14

Br. 15; *see* R. 16.  Finally, the Commissioner asserts that the ALJ is not required to address every portion of Ms. Hemphill's opinions regarding A.S.W.'s limitations in caring for herself.  Def.'s Br. 14–15 n.1.

### 1.    *The ALJ sufficiently addressed how she considered the unidentified teacher's opinion in finding a "less than marked" limitation in attending to and completing tasks.*

In assessing a plaintiff's ability to attend to and complete tasks, the ALJ must consider how well a child or adolescent maintains attention, including "the ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance."  20 C.F.R. § 416.926a(h)(1)(i).  This means "focusing long enough to initiate and complete an activity or task."[14]  *Id.*  The ALJ found A.S.W. has a "less than marked limitation" in this domain.  R. 14.

A.S.W. asserts that the ALJ did not properly evaluate the questionnaire completed by an unidentified teacher at Renaissance Academy, because the ALJ failed to reconcile her findings with evidence that supported more severe limitations.  Pl.'s Reply 2–3.  A.S.W. further asserts that the ALJ's decision "largely features a one-sided consideration of the evidence supporting the notion that Claimant suffers from less than marked limitations within this area."  *Id.* at 2.  Specifically, A.S.W. references the unidentified teacher's opinion that A.S.W. has "serious problems in changing from one activity to another without being disruptive and working without

---

[14] A school-age child, age six to twelve, should be able to follow directions, organize school materials, complete classroom and homework assignments, concentrate on details and not make careless mistakes, change from one activity to another without distracting others, and sustain attention well enough to participate in group sports.  20 C.F.R. § 416.926a(h)(2)(iv).  The child should be able to "complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation."  *Id.*  An adolescent child, age twelve to eighteen, should be able to independently plan and complete long-range projects, plan her time, and maintain attention on a task without being unduly distracted by others or distracting them.  *Id.* § 416.926a(h)(2)(v).

distr[a]cting self or others," Ms. Hemphill's notes that A.S.W. does not like to wait for help, and Dr. Armstrong's report that A.S.W. incorrectly answered a mathematical equation. Pl.'s Mem. 11, 14.

The Court disagrees, finding that the ALJ provided sufficient explanation of her decision and that substantial evidence supports the ALJ's decision. First, the ALJ explained how she assessed the unidentified teacher's questionnaire (that is, as "partially persuasive") and why ("because her opinion is "overly restrictive as well as an overstatement of and not reflected in the evidence").[15] R. 16. The ALJ compared the questionnaire to the objective medical evidence, to A.S.W.'s educational records, and to Tikia W.'s reports. The ALJ evaluated the "objective medical evidence" from Dr. Norris' June 1, 2020, report, which indicated that A.S.W. is "doing well in school." R. 15; *see generally* R. 15 (referencing 20 C.F.R. § 416.929, which indicates that ALJs must "always attempt to obtain medical evidence"). The results of the physical exam proved unremarkable, and A.S.W. was recommended for "full participation in all school sponsored sports activities." R. 15–16. The ALJ also compared the questionnaire to a June 23, 2020 mental status exam, which indicated that A.S.W. could keep her room clean without prompting and could shop online. R. 16. The ALJ highlighted Dr. Armstrong's findings that A.S.W. cooperated with all mental status tasks, possessed logical thought processes, and experienced adequate attention span with normal insight. *Id.* The ALJ also noted that the "[m]ental status examination results showed

---

[15] With respect to A.S.W.'s ability to attend to and complete tasks, the unidentified teacher found serious problems with switching activities without being disruptive and working without being distracting; obvious problems paying attention when spoken to directly; slight problems refocusing on a task when necessary, sustaining attention during activities, waiting to take turns, and working at a reasonable pace; and no problems carrying out multi-step and single-step instructions, focusing long enough to finish assigned activities or tasks, organizing school materials, completing class and homework assignments, and completing work accurately without careless mistakes. R. 133.

the claimant had no serious problems" in concentrating, persisting, or maintaining pace and remembering. R. 13.

Next, the ALJ contrasted the questionnaire with the state agency experts' opinions. R. 16–17; *see* R. 15 (referencing Social Security Ruling ("SSR") 16-3p, which indicates that "[a]djudicators at the hearing level . . . must consider the findings from [state agency medical experts] even though they are not bound by them"). The ALJ found Dr. Sampson and Dr. Montgomery's observations as "generally persuasive and supported by their review of the evidence," opining that A.S.W. "demonstrated no impairment of receptive or expressive language skills, has intact self-care skills, and keeps her room clean." R. 17. Furthermore, the ALJ analyzed the questionnaire against the backdrop of the "type, extent, and frequency of help" A.S.W. needs. R. 14; *see* SSR 09-1p ("We consider . . . [t]he kind of help, and how much help the child needs to do activities, and how often the child needs it, and [w]hether the child needs a structured or supportive setting, [and] what type of structure or support the child needs."). The ALJ stressed the lack of assistance A.S.W. obtained: A.S.W. is enrolled in regular education without need of special services or support, does not receive any treatment or medications, and had not been hospitalized or had regular visits with her doctor. R. 17; *see* Pl.'s Mem. 8 (referencing 20 C.F.R. § 416.926(a) (noting that "[i]t is appropriate to consider the need for medication, therapy in school and out of school . . . as well as needs for educational modification.").

The ALJ also found Ms. Hemphill's opinion more persuasive than the questionnaire, because her observations were supported and "generally consistent with the evidence" that A.S.W. experiences "significant mental health conditions, but that such does not rise to the level of marked or extreme overall." R. 17. Ms. Hemphill does not endorse the questionnaire's remarks. In comparison to the unidentified teacher's assessment that A.S.W. has serious problems in two of

thirteen areas of this domain, Ms. Hemphill opined that A.S.W. has no serious problems in the domain of attending and completing tasks. *Id.* This evidence serves as the basis for which the ALJ found the unidentified questionnaire "an overstatement of and not reflected in the evidence presented at the hearing level." R. 16. The ALJ highlighted that, although Ms. Hemphill noted that A.S.W. "struggles to stay on task at times" and "requires extra help," she ultimately determined that A.S.W. "does well with instructions, does not require an alarming amount of extra help, and [] is able to stay focused once redirected," and generally had "slight to no problems in a majority of domain areas." R. 17.

Finally, the ALJ compared the questionnaire to subjective reports of A.S.W.'s limitations. Tikia W. reported that A.S.W. is "less focused than others her age" and noncompliant with schoolwork, and A.S.W. reported that she does not complete classwork in classes she finds uninteresting. R. 16; *see* R. 218–19; R. 15 (referencing SSR 09-4p, which indicates that "it is common for all children to experience some difficulty attending and completing tasks from time to time"). Tikia W. also believes A.S.W. has "no learning or academic achievement problems, [is] reading at grade level, [and] complying with and completing schoolwork if interested." R. 16. The ALJ noted that A.S.W.'s teachers have not reported to Tikia W. any behavioral problems or problems with paying attention. R. 13, 17. The ALJ referenced A.S.W.'s activities, such as, showering, shopping online, keeping her room clean, and answering phone calls, opining that all "require[] some concentration and persistence" and are inconsistent with disabling limitations. R. 13, 18.

The ALJ also assessed the "interactive and cumulative effects of all" of A.S.W.'s impairments on her activities over a "prolonged and consistent" period. R. 14, 18; *see* SSR 09-2p ("We need evidence that is sufficient to evaluate a child's limitations on a longitudinal basis; that

is, over time."). The ALJ found that the "record and objective medical evidence reflects the claimant's limitations mildly restrict her daily activities," citing Dr. Norris and Dr. Armstrong's observations. R. 18. In fact, the ALJ found that A.S.W. engaged in "numerous normal daily activities," and was recommended for "full participation in all school sponsored sports activities." R. 14, 16. These findings buttress the ALJ's conclusion that the unidentified teacher's opinion that A.S.W. suffers *daily* with serious problems in two of thirteen domain areas was overstated. R. 16; *see* R. 133.

The ALJ committed no legal error in explaining her reasoning for concluding that A.S.W.'s overall difficulties in attending and completing tasks are moderate but less than marked. R. 13–14. Further, substantial evidence supports this finding. *See Russell v. Astrue*, No. 4:08cv392, 2009 WL 3152978, at *10, 21 (N.D. Fl. Sept. 23, 2009) (finding "less than marked" limitation attending and completing tasks where claimant's state agency psychologist evaluation identified that claimant "has the ability to maintain attention for tasks she likes, but is not motivated to do so"); *Vasquez ex rel. S.R.A. v. Astrue*, No. EDCV08-00449AJW, 2009 WL 1444728, at *1, 7, 9 (C.D. Cal. May 19, 2009) (finding a "less than marked" limitation attending and completing tasks despite the claimant's teacher reporting that claimant is "distracted easily, distracts others, has problems with pacing, and does not work well independently"); *England v. Astrue*, 490 F.3d 1017, 1022 (8th Cir. 2007) (finding a less than marked limitation in attending and completing tasks where claimant "had not repeated any grades at school and . . . had only 'some difficulty' in staying on track during his interview").

**2.    The ALJ sufficiently addressed how she considered the unidentified teacher's opinion in finding a "less than marked" limitation in interacting and relating to others.**

In the domain of interacting and relating to others, the ALJ is required to assess how well a child or adolescent uses "facial expressions, gestures, actions, or words" to "initiat[e] and respond[] to exchanges with other people, for practical or social purposes."    20 C.F.R. § 416.926a(i)(1)(i).    Additionally, this domain evaluates how well a child or adolescent is able to form intimate relationships with family members and friends in the child's age group, and how well the child responds to emotional behavioral cues.[16]    *Id.* § 416.926a(i)(1)(ii)–(iii).

A.S.W. asserts that the ALJ failed to "provide any meaningful discussion as to how the evidence supported her findings that Claimant had only a less than marked limitation," specifically as to the unidentified teacher's questionnaire. Pl.'s Mem 15; *see* R. 134 (noting "serious" problems in two of thirteens domain areas in interacting and relating with others). A.S.W. references the unidentified teacher's opinion that A.S.W. has "serious problems in following rules and respecting/observing adults in authority" and Dr. Armstrong's observations that A.S.W. "displayed a slow and lethargic temperament."    *Id.* at 16; Pl.'s Reply 3; *see* R. 15 (referencing SSR 09-5p, which indicates that "it is common for all children to experience some difficulty interacting and relating with others from time to time").

---

[16] A school-age child should be able to develop lasting friendships, begin to work in groups, begin to understand new perspectives and tolerate differences, and clearly communicate ideas. 20 C.F.R. § 416.926a(i)(2)(iv). Adolescents without an impairment should be able to "initiate and develop friendships with children who are [the adolescent's] age and to relate appropriately to other children and adults, both individually and in groups." *Id.* § 416.926a(i)(2)(v).

For the reasons described above, however, the ALJ stated that she found the unidentified teacher's questionnaire[17] only "partially persuasive," deeming it "overly restrictive as well as an overstatement of and not reflected in the evidence." R. 16; *see* SSR 09-2p (When there are inconsistencies in the case record, ALJs will be able to resolve the issue when "the most probative evidence outweighs the inconsistent evidence."). The ALJ found that A.S.W. "generally interacted normally with all treating providers"; and displayed "normal behavior, eye contact, speech, and emotional state." R. 13. The ALJ juxtaposed the questionnaire with Dr. Norris' examination that reported A.S.W. exhibiting sufficient "cooperativeness and appropriate mood and affect" and recommending for full participation in sports activities. R. 15–16. The ALJ compared the questionnaire to Dr. Armstrong's findings that A.S.W. displayed low volume speech, limited eye contact, and social self-focus (that is, desire to be left alone), but was cooperative with all mental status tasks. R. 16, 18. Furthermore, the ALJ noted Dr. Armstrong's opinion that A.S.W.'s prognosis was "fair to good . . . with sustained mental health intervention." R. 16.

The ALJ was generally persuaded by the state agency expert opinions, which assessed the unidentified teacher's opinion and still found that the objective evidence "supports significant mental health issues warranting no more than 'less than marked' limitations'" in interacting and relating with others. R. 17; *see* R. 16–17, 44, 56–57; R. 134 (Despite finding two serious problems and three obvious problems in this domain, the unidentified teacher nevertheless found it

---

[17] With respect to interacting and relating with others, the unidentified teacher found serious problems following rules and respecting or obeying adults in authority; obvious problems playing cooperatively with children, seeking attention appropriately, and taking turns in a conversation; slight problems making and keeping friends, expressing anger appropriately, asking permission, introducing and maintaining relevant and appropriate topics of conversation, and using adequate vocabulary and grammar to express thoughts and ideas in everyday conversation; and no problems relating experiences and telling stories, using language appropriate to the situation, and interpreting the meaning of facial expressions, body language, hints, and sarcasm. R. 134.

unnecessary to implement behavior modification strategies for A.S.W.). The ALJ stressed the lack of assistance A.S.W. obtained, mentioning multiple times that: A.S.W. did not take any medications, has not undergone any treatments, was in regular education, received no special support or services, and has not regularly been seen by a doctor. R. 13, 15, 17; *see* SSR 16-3p ("[I]f the frequency or extent of the treatment sought . . . is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the over evidence of record.").

The ALJ differentiated the unidentified teacher's questionnaire from Ms. Hemphill's questionnaire. Although noting that the unidentified teacher reported two "serious" problems in this domain, the ALJ found Ms. Hemphill's assessment more reliable and "generally persuasive" in finding mostly "slight to no problems" and no "serious" problems in interacting and relating with others. R. 16–17; *see* R. 183 (Ms. Hemphill indicated that A.S.W. has less than "serious" problems in only two out of thirteen domain areas and only monthly, as opposed to daily); SSR 09-1p ("When we determine the degree to which the child's impairment(s) limits each affected domain" we assess "[h]ow many of the child's activities in the domain are limited (for example, one few, several, many, or all)."). The ALJ also referred to Ms. Hemphill's notes indicating that A.S.W. gets angry if anyone touches her things, is socially awkward, and dislikes having to wait for help. R. 16–17

Lastly, the ALJ found that, to some degree, the unidentified teacher's opinion that A.S.W. had difficulties changing activities and working without distracting others was inconsistent with some of Tikia W.'s subjective reports. R. 16–17. The ALJ highlighted that neither A.S.W. nor Tikia W. generally complained to treating providers of serious problems with interpersonal interaction. R. 13. Although Tikia W. described A.S.W. as having limited social interaction, the

ALJ also found it significant that Tikia W. also told Dr. Norris that her daughter was socializing and interacting well with family, relatives, and peers, that her teachers had not reported any behavioral problems, that Tikia W. was generally unaware of what was happening at school, and that A.S.W. had returned to public school at Bayside Middle School.  R. 13, 15, 18; *see* SSR 09-1p (When determining a child's functioning, ALJs consider what activities the child is not able to perform *and* the types of activities the child is still able to perform.).  Based on this evidence, the ALJ found that A.S.W. was able to continue "to perform normal daily activities" and, therefore, her limitations only "mildly restrict her daily activities" and are inconsistent with prolonged disability.  R. 17–18; *see* 20 C.F.R. § 416.924a(b)(8) (ALJs consider variations in a child's "level of functioning to determine the impact of [her] chronic illness on [her] ability to function over time.").

The ALJ committed no legal error in addressing A.S.W.'s impairments and explaining her rationale in finding that A.S.W. has "less than a marked" limitation in interacting and relating to others.  R. 13–14.  Moreover, the ALJ's decision is supported by substantial evidence.  *See Russell*, 2009 WL 3152978, at *4–6 (refusing to overturn the ALJ's decision that the claimant had a "less than marked" limitation in relating and interacting with others because, despite her repeated threats to kill her teacher, fights with other children, and manipulation of others, she still participated in class discussions and enjoyed the one-on-one relationship with the examiner); *Vasquez ex rel. S.R.A.*, 2009 WL 1444728, at *7 (affirming the ALJ's conclusion that the claimant had a "less than marked" limitation in relating and interacting with others despite being subject to anger issues, having difficulties with peers, and not respecting authority).

### 3. The ALJ sufficiently addressed Ms. Hemphill's opinion in finding a "less than marked" limitation in caring for herself

In considering the domain of caring for oneself, the ALJ must consider how well a child or adolescent can "maintain a healthy emotional and physical state, including how well [they] get . . . physical and emotional wants and needs met in appropriate ways; how [they] cope with stress and changes in . . . environment; and whether [they] take care of [their] own health, possessions, and living area."[18] 20 C.F.R. § 416.926a(k). Considering all the evidence in the record, the ALJ found A.S.W. has a mild and "less than marked limitation" in this domain. R. 13–14, 18.

A.S.W. asserts that the ALJ failed to incorporate the responses within Ms. Hemphill's questionnaire that reflected more serious limitations in A.S.W.'s ability to care for herself and failed to "provide any glimpse" into the ALJ's "reasoning as to why more severe limitations were not incorporated," despite finding the questionnaire "generally persuasive."[19] Pl.'s Reply 4–5. A.S.W. also rejects the Commissioner's argument that Ms. Hemphill's findings of serious problems in two out of ten areas of the domain does not automatically translate to a marked limitation in this domain because it is inconsistent with the ALJ's decision and federal regulations.

---

[18] School-age children should be able to dress and bathe themselves with reminders, develop understanding of right and wrong and acceptable and unacceptable behavior, begin to demonstrate consistent control of their behavior, and avoid unsafe behaviors. 20 C.F.R. § 416.926a(k)(2)(iv). Adolescents ages 12 to 18 should "feel more independent from others and should be increasingly independent in all of [their] day-to-day activities." *Id.* § 416.926a(k)(2)(v).

[19] With respect to A.S.W.'s ability to care for herself, Ms. Hemphill found the following: no problems taking care of personal hygiene, caring for physical needs like dressing and eating, cooperating in taking needed medications, knowing when to ask for help, and using good judgment regarding personal safety and dangerous circumstances; slight problems being patient when necessary, and identifying and appropriately asserting emotional needs; obvious problems handling frustration appropriately; and serious problems responding appropriately to changes in her mood and using appropriate coping skills to meet the daily demands of a school environment. R. 185.

24

*Id.* at 4; *see* Def.'s Br. 20 ("[L]imitations of any of the activities in the examples do not necessarily mean that a child has a 'marked' or 'extreme' limitation.").

First, the ALJ explicitly addressed Ms. Hemphill's findings with respect to A.S.W.'s ability to care for herself. R. 17 (Ms. "Hemphill provided a teacher questionnaire opining the claimant has . . . serious problems responding to changes in her mood and using appropriate coping skills to meet daily demands of the school environment."). Moreover, the ALJ outlined Ms. Hemphill's written explanation that A.S.W. "dislikes waiting for help . . . gets angry if things are taken by teachers   . . . and is unable to self-soothe." R. 17.

However, the ALJ must consider "[a]ll of the relevant evidence" in determining A.S.W.'s limitations. R. 14 (citing 20 C.F.R. § 416.924a(a)). The ALJ identified facts in the record indicating that A.S.W.'s difficulty in caring for herself is "less than marked" and, in some respects, consistent with Ms. Hemphill's opinion that A.S.W. had slight to no problems in seven of the ten domain areas and an obvious problem in only one domain area. R. 15, 17–18; *see* R. 185. Specifically, the ALJ noted that A.S.W.'s "teachers have not reported any behavioral problems," and A.S.W. has returned to Bayside Middle School despite initial reports of disruptive behavior. R. 15. The ALJ also cited Dr. Norris' opinion that A.S.W. has normal sleep and development, is socializing "well with family/relatives and peers/friends," and exhibiting "cooperativeness and appropriate mood and affect." R. 16–17. Similarly, the ALJ cited to Dr. Sampson and Dr. Montgomery's findings that A.S.W. has a less than marked limitation in caring for herself, which is supported by the consultative exam indicating that A.S.W. has "intact self-care skills." R. 17–18. Further, after recounting Dr. Armstrong's finding that A.S.W. has "interests in being clean and well-dressed, taking care of her hygiene independently, keeping her room clean without

prompting, and shopping online," the ALJ found that "such activities are inconsistent with disability." R. 18.

Second, although the ALJ and the federal regulations indicate that a "marked" limitation is found when the child's "impairment(s) interferes seriously" with the child's day-to-day functioning in that domain, a finding of a serious problem in only two out of ten areas of the domain, does not *automatically* result in a "marked" limitation in the domain. *See* 20 C.F.R. § 416.926a(e)(2)(i); *see id.* § 416.926a(k)(2)(iv) (A child "should begin to recognize that [she is] competent in doing some activities and that [she has] difficulties with others."). This is especially true when the ALJ must consider "[a]ll the relevant information" in the record, that is, signs, symptoms, and laboratory findings, and the descriptors the ALJ has about the child's functioning from the parents, teachers, and other people who may know her. *Id.* § 416.926a(e)(1)(i). The evidence, which indicates that A.S.W. has had no hospitalizations, no treatments, no medications, and receives no special services or support at school, also supports the ALJ's finding that A.S.W. can function on a daily basis without serious limitations. R. 17–18.

After reviewing the entire record and providing an explanation for her conclusion, the ALJ did not commit legal error in finding that A.S.W.'s overall difficulties in this domain are mild and do not rise to the level of marked. R. 13. Further, substantial evidence supports this finding. R. 13; *see Frazier ex rel. S.F. v. Comm'r of Soc. Sec. Admin.*, No. 9:20cv1901, 2021 WL 6841765, at *10 (D.S.C. Dec. 10, 2021) (affirming the ALJ's conclusion that the claimant had a "less than marked" limitation in caring for himself despite getting into fights, needing to be forced to perform chores, and exhibiting disruptive and confrontational behavior at school, because he also had "normal grooming, eye contact, and psychomotor activity" and "appeared cooperative and appropriately dressed"); *Davis v. Colvin*, No. 1:13cv733, 2014 WL 325143, at *3, 14 (E.D. Va.

Jan. 28, 2014) (affirming the ALJ's conclusion that the claimant had a "less than marked" limitation in caring for himself despite a teacher questionnaire indicating that he had "obvious problems with seeking attention appropriately, following rules, asking permission appropriately, respecting [and] obeying authority, and taking turns in a conversation").

## VI.   **RECOMMENDATION**

For these reasons, the Court recommends that plaintiff's motion for summary judgment, ECF No. 15, be **DENIED**, and the decision of the Commissioner be **AFFIRMED**.

## VII.   **REVIEW PROCEDURE**

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.      A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*,

27

737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/

Robert J. Krask
United States Magistrate Judge

Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
August 8, 2023

28