IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

TIKIA W. ON BEHALF OF A.S.W.,

    Plaintiff,

        v.                                      Civil Action No. 2:22cv416

MARTIN O'MALLEY,[1]
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION

This is an action seeking review of a decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for supplemental security income ("SSI") disability benefits. On August 8, 2023, Magistrate Judge Robert J. Krask issued a Report and Recommendation ("R&R") on Plaintiff's motion for summary judgment recommending the Court deny the motion. ECF No. 20. Plaintiff timely filed an objection to the R&R, asserting three errors in the administrative law judge's ("ALJ") evaluation of questionnaires from an unidentified evaluator at Renaissance Academy and a teacher at Bayside Middle School. ECF No. 21. For the reasons below, the Court will adopt the R&R and overrule Plaintiff's objection.

                I.        BACKGROUND

On December 3, 2019, Tikia W., on behalf of A.S.W., a minor, filed an application for SSI disability benefits for a period beginning on April 1, 2016. Administrative Record ("R.") at 11, 104–05, 126, ECF No. 10. A.S.W.'s claim was denied initially and on reconsideration. R. 62–75.

---

[1]    On December 20, 2023, Martin O'Malley became the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Commissioner Martin O'Malley for former Acting Commissioner Kilolo Kijakazi in this matter.

On September 28, 2021, the ALJ held a hearing on the claim. R. 22–38. Plaintiff was advised of the right to counsel; however, she chose to proceed before the ALJ without legal representation or other assistance. R. 11, 27. On December 8, 2021, the ALJ issued a decision finding A.S.W. was not disabled and denying benefits. R. 11–18. The Appeals Counsel subsequently denied Plaintiff's request for review of the ALJ's decision on August 10, 2022, R. 1–5, which rendered the ALJ's decision as the final decision of the Commissioner.

On October 7, 2022, Plaintiff filed suit in this Court, appealing the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court referred the matter to a Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Plaintiff filed a Motion for Summary Judgment. ECF Nos. 11, 15. Upon review, the Magistrate Judge recommended that the Court deny Plaintiff's motion. R&R at 27. On August 22, 2023, Plaintiff filed a timely objection to the R&R. Pl.'s Objs. ("Obj."), ECF No. 21. On September 13, 2023, the Commissioner responded to Plaintiff's objection. Def.'s Resp. Pl.'s Obj., ECF No. 24.

## II.     LEGAL STANDARDS

### A.     Standard of Review Applied to ALJ Decisions

This Court reviews *de novo* any part of a Magistrate Judge's Report and Recommendation to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). The Court "may accept, reject, or modify, in whole or in part," the Magistrate Judge's recommended disposition. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

This Court will uphold an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). In conducting its substantial

evidence review, the Court must assure itself that the ALJ's analysis "build[s] an accurate and logical bridge from the evidence to [her] conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *see also Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (explaining the "assessment must include a narrative discussion describing how the evidence supports each conclusion") (quoting Social Security Ruling 96–8p). "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson*, 810 F.3d at 207 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)). Substantial evidence thus requires "more than a mere scintilla of evidence but may be less than a preponderance" of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). Between these two evidentiary thresholds lies a "zone of choice" wherein the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

      **B.**      **Child Disability Determinations Under the Social Security Act**

Under the Social Security Act, a child under the age of 18 is considered "disabled" if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); *see* 20 C.F.R. § 416.906. In making this determination, the ALJ must follow a sequential three-step analysis, considering first, whether the claimant is engaging in substantial

gainful activity; second, whether she has severe mental or physical impairments; and third, whether any of those severe impairments meets, medically equals, or functionally equals a condition within the Social Security Administration's ("SSA") listing of official impairments. 20 C.F.R. § 416.924; *see* 20 C.F.R. Pt. 404, Subpt. P., App. 1 (listing impairments). If the ALJ reaches the third step and finds a claimant's limitations do not meet or medically equal the listed impairments, it must consider "whether it results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). This functional equivalence analysis requires the consideration of a child's functioning compared to children of the same age in six different "domains," including (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. *Id.* § 416.926a(b)(1).

For an impairment to be functionally equivalent to a listed impairment, it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *Id.* § 416.926a(a). A "marked" limitation in a domain is defined as "when [the] impairment(s) interferes seriously with [the] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). A "marked" limitation is one that is "more than moderate" but "less than extreme." *Id.* On the other hand, an "extreme" limitation in a domain is "when [the] impairment(s) interferes very seriously with [the] ability to independently initiate, sustain or complete activities." *Id.* § 416.926a(e)(3). It is "the rating . . . give[n] to the worst limitations," but "does not necessarily mean a total lack or loss of ability to function." *Id.*

A child's impairment-related limitations must be based on "evidence from an acceptable medical source that establishes the existence of at least one medically determinable impairment," after which the SSA will "consider all relevant evidence in the case record to determine whether a

4

child is disabled." SSR 09-2p, 74 Fed. Reg. 7625, 7627 (Feb. 18, 2009) (footnote omitted). In examining "all relevant evidence," non-medical sources can be "very important to [the SSA's] understanding of the severity of a child's impairment(s) and how it affects day-to-day functioning." *Id.* These sources include "parents and caregivers, educational personnel (for example, teachers, early intervention team members, counselors, developmental center workers, and daycare center workers), public and private social welfare agency personnel, and others (for example, siblings, friends, neighbors, and clergy)." *Id.*

### III.   ANALYSIS

Plaintiff objects to the Court's adoption of the R&R on the basis that the Magistrate Judge does not sufficiently address the ALJ's alleged failure to adequately explain her evaluation of two teacher questionnaires in the functional equivalence analysis. Obj. at 7–22. The ALJ found that although A.S.W. was not gainfully employed as of the date of her application for disability benefits, and that she suffered from severe impairments of oppositional defiant disorder and personality disorder, A.S.W.'s impairments "d[id] not rise to a level that meets or medically equals the severity of a listing, or that functionally equals the listings." R. 18. In assessing functional equivalence, the ALJ found that A.S.W. had no marked or extreme limitations in any of the six domains of functioning.[2] R. 14

Plaintiff cites three errors in the ALJ's analysis. First, Plaintiff contends that the ALJ did not sufficiently explain how she considered the opinions in an unidentified questionnaire from an evaluator at Renaissance Academy in finding that A.S.W. had a "less than marked" limitation in

---

[2]   Specifically, the ALJ found that A.S.W. had no limitations in acquiring and using information, moving about and manipulating objects, and health and physical well-being. R. 14. She found that A.S.W. had less than marked limitations in attending and completing tasks, interacting and relating with others, and in the ability to care for herself. *Id.*

5

attending to and completing tasks. Obj. at 2–4. Second, Plaintiff raises a similar argument, but with respect to the ALJ's finding that A.S.W. had a "less than marked" limitation in interacting and relating to others. *Id.* at 4–6. And third, Plaintiff asserts that the ALJ did not adequately explain how she considered a questionnaire from Bayside Middle School teacher Andrea Hemphill in finding that A.S.W. had a "less than marked" limitation in caring for herself. *Id.* at 6–8.

In each instance, Plaintiff contends that the ALJ's analysis is not sufficient for the Court to "trace a path of the ALJ's reasoning from evidence to conclusion to permit meaningful review of the ALJ's decision." *Id.* at 8 (citing *Monroe*, 826 F.3d at 189). Likewise, Plaintiff objects to the Magistrate Judge's R&R on the basis that he seeks to impermissibly fill the gaps in the ALJ's reasoning. *Id.* at 3 ("Plaintiff requests that the Magistrate Judge's finding be rejected on the basis that they invite this Court to accept *post-hoc* rationalizations that this Court is not permitted to consider.").

The objection is without merit. As an initial matter, the Magistrate Judge did not engage in impermissible *post-hoc* rationalization of the ALJ's opinion. A reviewing court "must judge the propriety of [an agency's] action solely by the grounds invoked by the agency." *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). However, a Magistrate Judge does not engage in *post-hoc* rationalization when she does "not purport to provide *alternative* grounds to the ones provided by the ALJ for [her] findings," but rather "explain[s] the applicable legal standards in detail, review[s] the record, and determine[s] that there was, in fact, substantial evidence therein to support each of the ALJ's findings, however curt their formulation might have been." *Shamlee v. Astrue*, No. 2:09CV290, 2010 WL 3187609, at *2 (E.D. Va. Aug. 11, 2010) (emphasis in original). As discussed below, this is precisely the analysis the Magistrate Judge conducted.

A.      "Less than Marked" Limitation in Attending to and Completing Tasks

Plaintiff contends that the ALJ's findings that A.S.W.'s limitations in attending to and completing tasks and interacting and relating with others were "less than marked" are not supported by substantial evidence because the ALJ failed to properly consider the questionnaire of the Renaissance Academy evaluator. *Id.* at 2–4. Assessing a claimant's ability to attend to and complete tasks requires the ALJ to consider the child's "ability to filter out distractions and to remain focused on an activity or task at a consistent level of performance." 20 C.F.R. § 416.926a(h)(1)(i). This means "focusing long enough to initiate and complete an activity or task." *Id.* The Court finds that substantial evidence supports the ALJ's findings of a less than marked limitation in this domain.

The Plaintiff's objection focuses on a questionnaire that was completed by an unnamed individual at A.S.W.'s former school, Renaissance Academy. The questionnaire contains no written comments and no information about who completed the assessment. R. 131–38. No answers were provided to various questions on the form, including how long the individual knew the claimant, how frequent their interactions were, and what subjects the individual taught the claimant. R. 131. In the domain area "attending and completing tasks," the individual indicated that "[p]aying attention when spoken to directly" was an "obvious problem" and that "[c]hanging from one activity to another without being disruptive" and "[w]orking without distracting self or others" were "serious problem[s]." R. 133. In the ten other subdomains, the individual marked A.S.W. as having either "[n]o problem" or only a "slight problem." *Id.*

> The ALJ considered the questionnaire in her analysis, finding that it was
> 
> partially persuasive and supportive to the extent some of its 'obvious' assessments reflect no more than 'less than marked' limitations in the domain areas. However, the undersigned finds this opinion's multiple 'serious' domain assessments including changing activities without being disruptive, working without being

7

> distracting, following rules, and respecting/obeying adults is overly restrictive as well as an overstatement of and not reflected in the evidence presented at the hearing level. The claimant has significant mental health issues, but such do not rise to the level of marked or extreme.

R. 16. The Plaintiff contends this analysis is flawed because "the ALJ provided no explanation as to what evidence she considered or *how* such evidence conflicted with the teacher's assessment that Claimant suffered from serious problems with [the domain] area[s]." Obj. at 2 (emphasis in original).

The Court finds that Plaintiff advocates an overly prescriptive format for the ALJ's opinion. The ALJ need not use "'particular language' or adhere[] to any 'particular format' in a decision, so long as the ALJ reasonably articulates her decision so that a reviewing court can 'trace the path of the adjudicator's reasoning.'" *Boyd v. Kijakazi*, No. 2:21CV29, 2022 WL 949904, at *2 (E.D. Va. Mar. 29, 2022) (quoting *Todd A. v. Kijakazi*, No. 3:20CV594, 2021 WL 5348668, at *5 (E.D. Va. Nov. 16, 2021)). As recognized by the Magistrate Judge, while the ALJ contrasts the questionnaire generally to the "evidence presented at the hearing level" in this portion of her analysis, the remainder of her opinion makes clear what evidence she relied upon in determining that A.S.W. had a "less than marked" limitation in attending to and completing tasks. *See* R&R at 15–19. For example, the ALJ discussed that A.S.W.'s English teacher, Andrea Hemphill "noted the claimant struggles to stay on task at times, requires extra help, [and] dislikes waiting for help," but that the teacher also indicated "the claimant is placed in regular education with no special instructions, does well with instructions, does not require an alarming amount of extra help, and she is able to stay focused once redirected." R. 17. The ALJ highlighted testimony from A.S.W.'s mother, who reported that "if [A.S.W.] does not like the topic or [it's] something she does not want to do, she is noncompliant and does not do the work" and that she was "not completing assignments and a report from school showed incomplete work," but her mother also testified that she "does

8

not receive any special services or support at school," that her "teachers have not reported any behavioral problems or with paying attention," and that she would "complet[e] schoolwork if interested and likes it." R. 15–16. In reviewing the medical evidence, the ALJ referenced a physical exam conducted by Dr. David Morris, M.D. that found claimant was "doing well in school" and "developing normally"; a consultative examination conducted by Karen M. Armstrong, Ph.D. indicating that A.S.W. "ke[pt] her room clean without prompting" and had an "adequate attention span"; and a child function report noting that A.S.W. "complet[es] [her] chores most of the time." R. 15–16, 18. The Court finds that the ALJ has provided sufficient detail to trace her analysis and that the finding is supported by substantial evidence.

**B.      "Less than Marked" Limitation in Interacting and Relating to Others**

Second, Plaintiff argues that the ALJ's "less than marked" finding with respect to interacting and relating to others is not supported by substantial evidence. Here, Plaintiff again argues that the ALJ's analysis of the unidentified Renaissance Academy evaluator's questionnaire was inadequate. Obj. at 4–6. The domain of interacting and relating with others considers how well a child "initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [her] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." 20 C.F.R. § 416.926a(i). The Court finds that substantial evidence supports the ALJ's findings of a "less than marked" limitation in this domain.

With respect to interacting and relating to others, the unidentified evaluator at Renaissance Academy marked "[p]laying cooperatively with children," "[s]eeking attention appropriately," and "[t]aking turns in a conversation" as "obvious problem[s]," and "[f]ollowing rules" and "[r]especting/obeying adults in authority" as "serious problem[s]." R. 134. In the remaining eight

9

subdomains, the individual marked A.S.W. as having either "[n]o problem" or only a "slight problem." *Id.*

The ALJ found this opinion was an "overstatement of and not reflected in the evidence presented at the hearing level." R. 16. As made clear by the Magistrate Judge, while the ALJ did not specify the contrary evidence she was referring to in this portion of her opinion, the remaining analysis is sufficiently detailed to allow the Court to trace the ALJ's reasoning. *See* R&R at 20–23. For example, the ALJ discussed the exam conducted by Dr. David Morris, M.D., in which he noted that A.S.W. was "socializing and interacting well with family/relatives and peers/friends," and a review by State agency psychological consultant, Nicole Sampson, Ph.D., observing A.S.W. "demonstrated no impairment of receptive or expressive language skills." R. 15–17. The ALJ also noted that A.S.W.'s child function report indicated that she "answer[s] the telephone/make[s] calls," and "talks with family/friends." R. 18. The Court finds that the ALJ's explanation is sufficient and that there is "more than a mere scintilla of evidence" in support of the ALJ's finding in this domain. *Hancock*, 667 F.3d at 472.

### C. "Less than Marked" Limitation in Caring for Herself

Finally, Plaintiff contends that the ALJ's finding with respect to caring for herself is not supported by substantial evidence because the ALJ did not adequately consider the evaluation of English teacher Andrea Hemphill. Obj. at 6–8. The domain of caring for oneself "consider[s] how well [the child] maintain[s] a healthy emotional and physical state, including how well [the child] get[s] [her] physical and emotional wants and needs met in appropriate ways; how [she] cope[s] with stress and changes in [her] environment; and whether [she] takes care of [her] own health, possessions, and living area." 20 C.F.R. § 416.926a(k). The Court finds that substantial evidence supports the ALJ's findings of a "less than marked" limitation in this domain.

Plaintiff specifically argues that while "the ALJ found that Ms. Hemphill's assessment as a whole was persuasive, it is not apparent . . . how the ALJ incorporated Ms. Hemphill's limitations reflecting serious problems in caring for herself despite crediting the opinion in its entirety." Obj. at 7. In this domain, Ms. Hemphill's teacher questionnaire indicated "[h]andling frustration appropriately" was an "obvious problem" and "[r]esponding appropriately to changes in mood (e.g., calming self)" and "[u]sing appropriate coping skills to meet daily demands of school environment" were "serious problem[s]." R. 185. In her written comments, Ms. Hemphill noted that A.S.W. "does get angry if any of her things are taken by teachers and she is unable to self-soothe. She can not handle changes in her mood and sometimes becomes agitated if she has to wait for help." *Id.*

In assessing Ms. Hemphill's questionnaire, the ALJ noted it was "generally persuasive and supported by [Ms. Hemphill's] observations of the claimant's classroom performance and behavior." R. 17. The ALJ added that Ms. Hemphill's "opinion is generally consistent with the evidence at the hearing level, which supports significant mental health conditions, but that such does not rise to the level of marked or extreme overall." *Id.* As reflected in the Magistrate Judge's R&R, while the ALJ did not identify what "evidence at the hearing level" she found to be consistent with the opinion, the ALJ's analysis overall provides the Court with sufficient detail to follow her reasoning.[3] *See* R&R at 24–27. For example, the ALJ noted that the consultative

---

[3]   Plaintiff argues in her objection that the Magistrate Judge mischaracterizes her argument, noting that "Plaintiff does not suggest that Ms. Hemphill's assessed serious problems in two of ten activities with this domain automatically renders marked limitations as a whole." Obj. at 8 (citing R&R at 26). However, the Magistrate Judge does not characterize Plaintiff's argument in this way. The portion of the R&R cited by Plaintiff contains the Magistrate Judge's analysis of whether the ALJ's opinion is supported by substantial evidence. *See* R&R at 26 (noting that the ALJ must consider "[a]ll the relevant information" in assessing functioning in a given domain (quoting 20 C.F.R. § 416.926a(e)(1)(i)).

11

examination by Karen M. Armstrong, Ph.D. indicated the claimant was "observed to have intact self-care skills, interests in being clean and well-dressed, taking care of her hygiene independently, keeping her room clean without prompting, and shopping online." R. 16. Further, the ALJ indicated that "the medical evidence of record reveals no hospitalizations, treatment, or medications; control of her mental health symptoms; and the ability to take care of personal needs and perform day-to-day functioning without severe limitations." R. 17. The Court finds substantial evidence in support of the ALJ's finding.

## IV. CONCLUSION

The Court will overrule Plaintiff's objection to the R&R and deny Plaintiff's Motion for Summary Judgment. Accordingly, the Court will adopt the Magistrate Judge's R&R and affirm the Commissioner's final decision.

An appropriate order shall issue.

/s/
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: March 21, 2024